```
                    UNITED STATES DISTRICT COURT
                             FOR THE
                       DISTRICT OF VERMONT

STEPHEN C. BELLOWS,           )
                              )
          Plaintiff,          )
v.                            )          Case No. 2:25-cv-390
                              )
GRAND ISLE COUNTY SHERIFF'S   )
DEPARTMENT, et al.,           )
                              )
          Defendants.         )
```

## OPINION AND ORDER

Pro se Plaintiff Stephen C. Bellows brings this action against the Grand Isle Sheriff's Department and four of its current and former employees. He alleges violations of his constitutional rights under 42 U.S.C. § 1983 as well as state law claims. On September 10, 2025, the defendants moved to dismiss the complaint. ECF No. 18. Bellows filed a response, ECF No. 22, and the motion is now fully briefed and before this Court, ECF No. 24. For the reasons set forth below, the Court grants in part, and denies in part, the motion. Plaintiff is given leave to amend his complaint.

## I.  Factual Allegations

Stephen Bellows lives in Grand Isle, Vermont. ECF No. 7 at 1. Plaintiff names the following defendants in his complaint: (1) the Grand Isle Vermont Sheriff's Department; (2) Raymond Allen, the Sheriff of the Grand Isle Sheriff's Department; (3)

Brandon Allen, former Corporal of the Grand Isle Sheriff's Department; (4) Blake Allen, former Sergeant of the Grand Isle Sheriff's Department; and (5) Eric Pockette, Deputy Sheriff of the Grand Isle Sheriff's Department.  In his pro se complaint, Bellows alleges the following facts regarding two encounters with the Grand Isle police in 2023.

### A. Traffic Stop on September 26, 2023

On September 26, 2023, Bellows was driving South on Route 2 with a passenger when he saw blue lights in his rearview mirror and pulled over to the side of the road.  ECF No. 7 at 3. Deputy Eric Pockette of the Grand Isle Sheriff's Department approached the passenger window and asked routine traffic stop questions.  *Id.* at 3.  Bellows handed over his license, registration and proof of insurance but did not answer when Pockette asked if he was in the military.  *Id.*  Pockette "appeared frustrated" and told Bellows not to get out of his car.  *Id.*

Corporal Brandon Allen of the Grand Isle Sheriff's Department arrived next and began asking questions from the passenger side window of the car.  *Id.* at 4.  Then Pockette returned, handed back Bellows' license and registration, and advised Bellows to slow down.  *Id.*

No tickets were issued at this traffic stop.  *Id.*

**B. Post Office Incident on November 11, 2023[1]**

On November 11, 2023, around 11:07 a.m., Plaintiff drove down Route 2 to retrieve his mail from the South Hero Post Office. *Id.* at 4. Once at the Post Office, Bellows pulled into the parking lot, exited his vehicle and walked toward the building's front door. *Id.* Within a few steps of the front door, Bellows heard a siren go off behind him. *Id.* When he turned around, he saw a police car pulling in behind his car. *Id.* at 4-5.

Pockette exited the police car, and yelled "Hop back in the car for me, man." *Id.* at 5. Plaintiff was confused and stood still. *Id.* Pockette told Bellows that he was getting pulled over, instructed him to get back in his car, and said: "we're not playing this." *Id.* Bellows approached his vehicle, and Pockette reached under Bellows' coat and felt the holster of Bellows' handgun. *Id.*

Pockette grabbed Bellows' right shoulder and pressed him against his car, then put Bellows' hands behind his back and took the handgun and placed it on the roof of the car. *Id.*

---

[1] According to the defendants, the second incident took place on November 22, 2023, not November 11, 2023. ECF No. 18 at 1 n.1. The exact date does not make a difference in the analysis of this motion to dismiss. With that said, the Court will accept Plaintiff's alleged date for the purposes of this motion.

Brandon Allen arrived at approximately 11:09 a.m. Bellows tried to get back in his car, but Allen stopped him. *Id.* at 6. Brandon Allen told Bellows to step to the front of the Sheriff's car, and to sit down on the bumper of the car. *Id.* Brandon Allen "further yelled and belittled Plaintiff saying he is sick of the way Plaintiff is acting, called him a raging jerk and stated stop interrupting him and shut your mouth." *Id.*

Then: "Pockette misrepresented to Defendant Blake Allen, who was then on scene, that Plaintiff got out of the car at a traffic stop, (inspection sticker) tried to go inside (post office), would not listen to a fucking thing he said and that he took a gun off Plaintiff." *Id.* Brandon Allen told Blake Allen that during his last interaction with Bellows, he had been hostile and two-faced. *Id.*

Blake Allen asked Bellows if he had a license, and Bellows turned to retrieve his license. Brandon Allen grabbed Bellows by both shoulders of his coat, turned him around and yelled "Listen, what fucking part of listen don't you understand? Keep your ass on the bumper." *Id.*

Brandon Allen told Eric Pockette that "this is what I have been telling you since the last traffic stop." *Id.* at 7. He said that, at the previous stop, he backed up Pockette and the interaction had not been pleasant: "You and your buddy in the car were raging not nice people." *Id.*

4

Brandon Allen told Bellows he put out a "10 – 0" code to warn his fellow officers that Bellows was hostile. *Id.* He told Bellows: "You are not to be trusted and you will be treated as such and just so you know, that the next time I stop you, you're going to have zero chances." *Id.*

At some point during the stop, Pockette ran the serial number of Bellows' gun. ECF No. 7 at 21. Additionally, Plaintiff appears to agree in his Opposition to the Motion to Dismiss that he was given a ticket at the November 11, 2023 stop. *See* ECF No. 22 at 7 ("Ticket for expired registration Warning for cracked windshield and expired inspection sticker").

## II. <u>Legal Standard</u>

Defendants have moved to dismiss Bellows' claims under Rules 12(b)(1) and 12(b)(6) of the Federal Rules of Civil Procedure. To survive a Rule 12(b)(6) motion to dismiss, a pleading "must contain sufficient factual matter, accepted as true, to 'state a claim for relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)); *see also* Fed. R. Civ. P. 8(a)(2). "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 556). The Court must draw all reasonable inferences in favor of the non-

moving party, but need not accept conclusory statements. *Lanier v. Bats Exch., Inc.*, 838 F.3d 139, 150 (2d Cir. 2016). Although a self-represented litigant's complaint must be liberally construed, it must nevertheless state a plausible claim for relief to survive a motion to dismiss. *See Walker v. Schult*, 717 F.3d 119, 124 (2d Cir. 2013); *Davila v. Lang*, 343 F. Supp. 3d 254, 266 (S.D.N.Y. 2018) ("Thus, the Court's 'duty to liberally construe a plaintiff's complaint is not the equivalent of a duty to rewrite it.'" (quoting *Geldzahler v. N.Y. Med. Coll.*, 663 F. Supp. 2d 379, 387 (S.D.N.Y. 2009)).

"In resolving a motion to dismiss under Rule 12(b)(1), the district court must take all uncontroverted facts in the complaint (or petition) as true, and draw all reasonable inferences in favor of the party asserting jurisdiction." *Fountain v. Karim*, 838 F.3d 129, 134 (2d Cir. 2016) (internal quotation marks omitted). For disputed jurisdictional fact issues, the Court may refer to evidence outside the pleadings. *Zappia Middle E. Constr. Co. Ltd. v. Emirate of Abu Dhabi*, 215 F.3d 247, 254 (2d Cir. 2000). Under Rule 12(b)(1), the "plaintiff bears the burden of proving the Court's jurisdiction by a preponderance of the evidence." *Graham v. Select Portfolio Servicing, Inc.*, 156 F. Supp. 3d 491, 499 (S.D.N.Y. 2006)

(citing *Makarova v. United States*, 201 F.3d 110, 113 (2d. Cir. 2000)).[2]

### III. **Discussion**

Plaintiff seeks damages from all defendants named in his complaint. ECF No. 7 at 28. There is no indication in his complaint that he seeks any specific type of relief other than damages. *See id.* at 28-29.

As discussed in more detail below, many of Plaintiff's allegations—once liberally construed—are best understood as brought under Section 1983. 42 U.S.C. § 1983 "is not itself a source of substantive rights" but provides "a method for vindicating federal rights elsewhere conferred[.]" *Patterson v. Cnty. of Oneida*, 375 F.3d 206, 225 (2d Cir. 2004) (internal quotation marks and citation omitted).

_____

[2]Although Defendants move to dismiss under Rules 12(b)(1) and 12(b)(6), they do not clearly identify which Rule applies to which claims. Presumably they move in part under Rule 12(b)(1) because the motion raises sovereign immunity; however, whether Eleventh Amendment immunity dismissals are under 12(b)(6) or 12(b)(1) is still an open question in this circuit. *See Ripa v. Stony Brook Univ.*, 808 F. App'x 50, 50 n.1 (2d Cir. 2020) ("Whether Eleventh amendment immunity 'constitutes a true issue of subject matter jurisdiction or is more appropriately viewed as an affirmative defense' has not yet been decided by the Supreme Court or this Court."). In this Opinion, the Court has confined itself to the pleadings and adheres to the stricter standard of Rule 12(b)(6). *See JTE Enters., Inc. v. Cuomo*, 2 F. Supp. 3d 333, 339 (E.D.N.Y. 2014) (collecting cases).

**A. Official Capacity Claims**

Plaintiff specifies that he is suing the defendants in their official capacities.  ECF No. 7 at 28 ("WHEREFORE, Plaintiff respectfully requests this Honorable court: A) Award damages from the Grand Isle, Vermont Sheriff's Department in excess of the jurisdictional minimum; B) Award damages from Raymond Allen, official capacity, in excess of the jurisdictional minimum; C) Award damages from Brandon Allen, Blake Allen, and Eric Pockett in their official capacity in excess of the jurisdictional minimum").  "A claim against a government officer in his official capacity is, and should be treated as, a claim against the entity that employs the officer." *Mathie v. Fries*, 121 F.3d 808, 818 (2d Cir. 1997) (citing *Kentucky v. Graham*, 473 U.S. 159, 165-66 (1985)); *see also Will v. Mich. Dept. of State Police*, 491 U.S. 58, 71 (1989) ("A suit against a state official in his or her official capacity is not a suit against the official but rather a suit against the official's office.").

*1. Category of Officials and Constitutional Claims under Section 1983*

The Eleventh Amendment of the United States Constitution prohibits a citizen from bringing a suit against his or her own state or its agencies in federal court, absent a waiver of immunity and consent to suit by the state or a valid abrogation

8

of constitutional immunity by Congress. *Kimel v. Fla. Bd. of Regents*, 528 U.S. 62, 72-73 (2000). The analysis in this case, therefore, begins with looking at whether or not in this context the Grand Isle Sheriff's Department and its employees, sued in their official capacities, are likely considered arms of the state or whether they are local government officials.

In their motion to dismiss, defendants ask the Court to rely on *Huminski v. Corsones*, in which the Second Circuit found that a Sheriff in Vermont was acting for the state (and thus a state official entitled to sovereign immunity) when he engaged in behavior that led to the issuance of a Notice Against Trespass. *Huminski v. Corsones*, 396 F.3d 53, 70-73 (2d Cir. 2004). In *Huminski*, the Second Circuit explained that "relevant factors in determining the status of an official include how the state's laws and courts categorize the official; whether the official is elected and by whom; the scope of the official's duties; to whom the official is fiscally responsible, if anyone; which governmental entity sets or pays the official's salary; which governmental entity provides the official's equipment, if any; and the scope of the official's jurisdiction." *Id.* at 71. The court emphasized that "[f]or a law-enforcement official, the most important factor in making this determination is whether he or she has the authority to investigate and enforce the state's criminal law," whereas the election and jurisdictional

boundaries were "relatively unimportant factors." *Id.* The
Second Circuit analyzed the status of Sheriffs under Vermont
law, as set forth in the Vermont Statutes Title Twenty-Four,
Chapter Five, *id.* at 72, and then affirmed the district court's
decision that "an analysis of the relevant factors indicates
that Sheriff Elrick was a state official with regard to his
involvement" in the events at issue, where "[t]he Rutland County
Sheriff's Department, for whom Elrick was employed, had a
contract with the State of Vermont through the Vermont Court
Administrator's Office to manage security at the Rutland
District Court." *Id.* at 73.  In conducting its analysis, the
Second Circuit noted—albeit in dicta—that Sheriffs performing
law enforcement duties were likely acting as state officials:

> Third, although it is not necessary to decide the
> broader issue, we think that in light of the statutory
> structure under which Elrick acted, he was likely a
> state official when he was performing his general
> duties for the sheriff's department, particularly when
> he was acting pursuant to state law. . . .State
> statute establishes the most important factor in this
> inquiry. . . : Elrick had the authority to investigate
> and enforce the State of Vermont's criminal law in
> Rutland County.

*Id.* (citing *McMillian v. Monroe County*, 520 U.S. 781, 790
(1997)).

Relying on the guidance in *Huminski*, some cases in this
district have found that Vermont sheriffs and deputies were
acting as state officials in certain situations—for example,

10

when transporting an individual to jail. *See Rheaume v. Griswold*, No. 1:15-cv-258, 2016 U.S. Dist. LEXIS 96096, 2016 WL 3961082, at *5 (D. Vt. July 20, 2016). In *Hitzig v. Hubbard*, this Court found that deputy sheriffs who "arrived at the scene of an accident" were "investigating and, if necessary, enforcing the State of Vermont's criminal law" and as such: "in the words of the *Huminski* court, the defendants were performing their 'general duties'" and were "acting as state officials" and "thus entitled to Eleventh Amendment immunity for the damages claims brought against them in their official capacities." *Hitzig v. Hubbard*, No. 1:08-CV-102, 2010 U.S. Dist. LEXIS 84444, 2010 WL 3239321, at *8 (D. Vt. Aug. 16, 2010). The court in *Hitzig* further explained that, "for the sake of argument," the claims against defendants would be also barred as a matter of municipal law. *Id.; see also Langdell v. Marcoux*, No. 2:08-cv-161, 2009 U.S. Dist. LEXIS 96159, 2009 WL 3297589, at *12-16 (D. Vt. Oct. 13, 2009) (dismissing official capacity claims against a sheriff where plaintiff was arrested on various state criminal charges, but also conducting, "for the sake of argument," an analysis under municipal law and finding the charges should similarly be dismissed). In *Daniel v. Begnoche*, by contrast, this Court observed that Vt. Stat. Ann. tit. 3 § 1101(b)(1) appeared to conflict with Vt. Stat. Ann. tit. 24 § 290(a), and that—given the conflict—Vermont law may favor categorizing fulltime deputy

11

sheriffs paid by the county as local officials. *Daniel v. Begnoche*, No. 2:13-CV-00079, 2014 U.S. Dist. LEXIS 200074, 2014 WL 12781295, at *10 (D. Vt. May 21, 2014). In *Daniel*, the court declined "to make a definitive finding at this time" because the parties did not address the other factors of *Huminski*, including whether the law enforcement official had the authority to investigate and enforce the state's criminal law, and denied the Franklin County Sheriff Department's motion to dismiss as premature. *Id.* In a footnote, the court explicitly noted that *Huminski* left the ultimate decision open. *Id.* at 11 n.4 ("If FCSD later moves for summary judgment on the theory that Begnoche was a state employee, the Court encourages both parties to brief the Second Circuit's dicta statement speculating that a Vermont sheriff or deputy sheriff is likely a state official when performing his or her general duties, 'particularly when he [or she] was acting pursuant to state law.' *Huminski*, 396 F.3d at 73. While the Court has applied the Second Circuit's dicta in the past, it **does not consider the issue settled.**" (emphasis added)).

In this case, defendants argue that under *Huminski* they should be seen as state officials entitled to Eleventh Amendment immunity. However, they do not thoroughly address each *Huminski* factor—rather, they state that *Huminski* would categorize them as

state officials.[3]  In his response, Bellows does not dispute that the defendants are state officials; rather, he appears to ignore the issue of Eleventh Amendment and sovereign immunity in its entirety.

If the defendants are ultimately considered state officials, they will be protected from suit absent waiver.  The State of Vermont has preserved its immunity under the Eleventh Amendment by statute, *see* Vt. Stat. Ann. Tit. 12, § 5601(g) ("Nothing in this chapter waives the rights of the State under the Eleventh Amendment of the U.S. Constitution"), with some nuances that this Opinion addresses in the next section. Accordingly, if the defendants are state officials, the Court could dismiss these claims for damages against all defendants in their official capacities as barred by Eleventh Amendment sovereign immunity.  *See Darcy v. Lippman*, 356 F. App'x 434, 437 (2d Cir. 2009) ("The Eleventh Amendment likewise bars [plaintiff] from pursuing a claim for damages against the individual defendants in their official capacities.") (summary order); *see also Kentucky v. Graham*, 473 U.S. 159, 168-69 (1985).

---

[3]  Defendants do note that they must have been enforcing state law because the ticket they issued was for a violation of 23 V.S.A. § 301.  ECF No. 18 at 5.

On the other hand, if the Sheriff's Department and its employees are considered local government officials instead of state officials, then the suit for damages—to the extent that its claims are brought pursuant to § 1983—would be treated as a suit brought against Grand Isle itself. *Kentucky*, 473 U.S. at 167 n.14; *Coon v. Town of Springfield*, 404 F.3d 683, 687 (2d Cir. 2005) ("[A] § 1983 suit against a municipal officer in his official capacity is treated as an action against the municipality itself."). Yet in order to prevail on a claim against Grand Isle, Bellows would need to allege facts that permit a reasonable inference that the deprivation of his federal rights was "caused by a governmental custom, policy, or usage of the municipality." *Jones v. Town of East Haven*, 691 F.3d 72, 80 (2d Cir. 2012) (citing *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 690-91 (1978)); *see also Saeli v. Chautauqua County*, 36 F.4th 445, 460 (2d Cir. 2022). Though plaintiff did add the words "policy, custom, and practice" to several parts of his complaint, he did so only in a conclusory manner and did not elaborate with any facts that would allow the Court to make further inferences on his behalf. *See Wray v. City of New York*, 490 F.3d 189, 195 (2d Cir. 2007) (plaintiff must plead "three elements: (1) an official policy or custom that (2) causes the plaintiff to be subjected to (3) a denial of a constitutional right." (internal quotation marks omitted)).

14

To state a claim based upon a municipality's failure to train or supervise, a plaintiff must allege facts tending to show that insufficient training or supervision was a result of deliberate indifference to constitutional rights. *Okin v. Village of Cornwall-on-Hudson Police Dep't*, 577 F.3d 415, 440 (2d Cir. 2009). To establish deliberate indifference, a plaintiff must "identify a specific deficiency in the city's training program and establish that the deficiency is closely related to the ultimate injury, such that it actually caused the constitutional deprivation." *Amnesty Am. v. Town of W. Hartford*, 361 F.3d 113, 129 (2d Cir. 2004) (internal quotation marks and citation omitted). Here, Plaintiff's bare allegations fall short. *See, e.g., Accarino v. Town of Monroe*, 857 F. App'x 49, 50 (2d Cir. 2021) (summary order) ("Plaintiffs' conclusory statement that a municipal policy or custom existed… does not support their claim… Setting aside Plaintiffs' conclusory allegation, we cannot reasonably infer the existence of a municipal policy or custom from the single incident described in the complaint.").

Accordingly, Bellows has not alleged plausible claims against the defendants in their official capacities because he has failed to assert sufficient facts under § 1983 for municipal liability. If defendants are state officials, they are protected by sovereign immunity. In the next section, the Court

15

briefly addresses the remaining reasons why Bellows has not alleged a plausible claim against the defendants in their official capacities.

*2. Tort Claims and Applicable Immunities.*

As explained above, if the defendants are state employees then they may be entitled to sovereign immunity in their official capacities—so long as the state has not waived sovereign immunity. As is relevant here, Vermont has waived its immunity through the Vermont Tort Claims Act in "cases where liability arises from 'injury to persons…caused by the negligent or wrongful act or omission of an employee of the state while acting within the scope of employment, under the same circumstances, in the same manner and to the same extent as a private person would be liable to the claimant…'" *Kane v. Lamothe*, 2007 VT 91, ¶ 6, 936 A.2d 1303, 1307 (quoting 12 V.S.A. § 5601(a)). "Thus, the State remains immune for governmental functions for which no private analog exists" and "waives its immunity only to the extent a plaintiff's cause of action is comparable to a recognized cause of action against a private person," an approach which "bars negligence actions against the State in connection with purely governmental functions so as to avoid imposing novel and unprecedented liabilities on the State." *Id.* (internal quotation marks and citations omitted).

Defendants argue that, nevertheless, they are entitled to sovereign immunity with regard to the negligence claims in this case.  Bellows has made several vague claims titled "state claim of negligence": one against the "Grand Isle, Vermont Sheriff's Department" (ECF No. 7 at 7-8) and one against "Raymond Allen, Grand Isle Sheriff" (*id.* at 8-9); in addition, Bellows asserts claims of "negligence" against Brandon Allen (*id.* at 15), Blake Allen (*id.* at 18), and Eric Pockette (*id.* at 27).  The Court must decide, then, whether these claims make out claims of negligence against the defendants (in their official capacities) that fit within the waiver of sovereign immunity.

The defendants argue that these negligence claims are based upon allegations that involve police work, and as such they are claims for governmental functions for which no private analog exists (and thus do not fall within the waiver of sovereign immunity).  Defendants cite several *municipal* immunity cases in support of their argument.  The rule that defendants advocate for is too broad; some cases have allowed specific situations of negligence claims to proceed against those engaged in police work in Vermont.[4]  All the same, the Court ultimately agrees with

---

[4] In *Rochon v. State*, the Vermont Supreme Court found that negligence provided a private analog under which the state could be held liable for a police cruiser that got into an accident with the plaintiff; however, Vermont's emergency vehicle statutes required a higher level of culpability—recklessness—to hold the driver liable.  *Rochon v. State*, 2004 VT 77, ¶¶ 6-7.

the defendants that the official capacity negligence claims must be dismissed.

Though the Vermont Tort Claims Act does constitute a waiver of sovereign immunity in certain cases, the "exclusive jurisdiction" language in 12 V.S.A. § 5601(a) likely bars a federal court from hearing tort claims against the state. *See* 12 V.S.A. 5601(a) ("The Superior Courts of the State shall have exclusive jurisdiction of any actions brought hereunder"), and (g) ("Nothing in this chapter waives the rights of the State under the Eleventh Amendment of the Constitution"); *see also Rheaume v. Tallon*, No. 07-cv-262, 2009 U.S. Dist. LEXIS 127768, 2009 WL 385422, at *3 (D. Vt. Feb. 12, 2009) (negligence claims should have been brought against the state, and moreover even if the state had been named the claim would have proceeded exclusively in Vermont superior courts); *see also Dean v. Town of Hartford*, No. 5:22-cv-225, 2025 U.S. Dist. LEXIS 161091, 2025 WL 2391465, at *10 (D. Vt. Aug. 18, 2025) (the state is immune

_____

In *Kennery v. State*, the Vermont Supreme Court found that the common law duty of care was enough to meet the requirements of the waiver of sovereign immunity in the VTCA, § 5601(a), where state troopers performed a welfare check on the wrong house. *Kennery v. State*, 2011 VT 121 ¶ 28.  On the municipal side, in *Rudavsky v. City of Burlington* the court found that the city could be held vicariously liable for torts including negligent training and supervision, where the court found a duty because prisoners in custody were owed a duty of protection by custodians.  *Rudavsky v. City of Burlington,* No. 2:18-cv-25, 2018 U.S. Dist. LEXIS 166027, 2018 WL 4639096, at *16-19 (D. Vt. Sep. 27, 2018).

under the Eleventh Amendment, and "the Vermont Tort Claims Act makes jurisdiction in the federal court on the state-law claims unlikely."); *see also Barrette v. Vill. of Swanton*, No. 2:22-cv-00129, 2023 U.S. Dist. LEXIS 47323, 2023 WL 3891034, at *22-24 (D. Vt. June 6, 2023) (VTCA does not waive Vermont's sovereign immunity such that plaintiffs may sue state employees for negligence in federal court).[5] Claims brought against the defendants for negligent acts, if they are state employees, should have been brought against the state (unless the allegations are for gross negligence or willful misconduct—neither of which were alleged as part of the negligence claims). 12 V.S.A. § 5602(a)-(c); 3 V.S.A. § 1101(b)(1). Accordingly, the VTCA does not provide a sovereign immunity waiver here in this federal case for the type of broad claim of negligence that Bellows alleges. In sum, if the defendants are considered state employees sued in their official capacities, then all claims against them in this case must be dismissed.

On the municipal side, the Vermont Supreme Court has held that "[m]unicipal immunity protects municipalities 'from tort liability in cases where the municipality fulfills a

---

[5] A state's consent to be sued in its state courts is not sufficient to constitute a waiver of its Eleventh Amendment immunity. *See, e.g., Florida Dept. of Health & Rehabilitative Servs. v. Florida Nursing Home Assn.*, 450 U.S. 147, 149-50 (1981).

governmental rather than a proprietary function.'" *Sobel v. City of Rutland*, 2012 VT 84, ¶ 14 (internal quotation marks omitted). *See, e.g., MacLeod v. Town of Brattleboro*, No. 5:10-cv-286, 2012 U.S. Dist. LEXIS 168499, 2012 WL 5949787, at *55-65 (D. Vt. Nov. 28, 2012)(finding that the Town of Brattleboro was entitled to municipal strain of sovereign immunity for employee's tasing of plaintiff, as well as for claims challenging the adequacy of the Town's taser training and supervision, where training police officers and evaluating their conduct both "fall within the governmental function of police work"); *Decker v. Fish*, 126 F. Supp. 2d 342, 346 (D. Vt. 2000) ("municipalities are immune from state law claims arising from injuries caused by the operation of their police departments"); *Connelly v. City of St. Albans*, No. 2:21-cv-00291, 2024 LX 208067, at *7 (D. Vt. Feb. 26, 2024) (city entitled to municipal immunity where "Plaintiff's negligence claim arises from the City's provision of police services, a governmental function"); *Kucera v. Tkac*, No. 5:12-cv-264, 2013 U.S. Dist. LEXIS 50024, 2013 WL 1414441, at *32-34 (D. Vt. Apr. 8, 2013) (municipal immunity applied to training and supervising police officers, as these are governmental functions). Here, given the conclusory nature of the claims set forth by Bellows, the Court finds that the negligence claims he advances fall within the protection of municipal immunity. As defendants point out, the claims are

2:25-cv-00390-wks    Document 31    Filed 02/10/26    Page 21 of 47

general negligence claims that allege that the Sheriff's Department was negligent for the provision of the governmental functions of police forces, such as training and hiring. Accordingly, if the defendants are considered to be municipal employees sued in their official capacities, then all claims against them must be dismissed because they are protected from tort liability by municipal immunity, and—as explained in the previous section—Bellows has not plausibly alleged municipal liability under § 1983.

In sum, for the reasons set forth above, the Court dismisses *all* of the claims brought against the defendants in their official capacities.

## B. Individual Liability Claims

The Court next addresses Plaintiff's claims against the remaining defendants in their individual capacities, for many of which they assert qualified immunity. *See* ECF No. 18 at 23-24 (raising qualified immunity defense for the "seizure and force claims" and the "free speech claims").

"Qualified immunity shields government officials from civil damages liability unless the official violated a statutory or constitutional right that was clearly established at the time of the challenged conduct." *Reichle v. Howards*, 566 U.S. 658, 664 (2012). A police officer's conduct violates "clearly established law" only when it is clear that "every reasonable

21

official would have understood that what he is doing violates
that right." *Coollick v. Hughes*, 699 F.3d 211, 220 (2d Cir.
2012) (internal quotation marks omitted). "Only Supreme Court
and Second Circuit precedent existing at the time of the alleged
violation is relevant in deciding whether a right is clearly
established." *Torcivia v. Suffolk Cnty.*, 17 F.4th 342, 367 (2d
Cir. 2021) (internal quotation marks omitted). "A defendant has
the burden of proving the affirmative defense of qualified
immunity." *Guan v. City of N.Y.*, 37 F.4th 797, 806 (2d Cir.
2022). Although courts should resolve the question of qualified
immunity at the "earliest possible stage in litigation," *Saucier
v. Katz*, 533 U.S. 194, 201 (2001) (citation and internal
quotation marks omitted), *abrogated on other grounds by Pearson
v. Callahan*, 555 U.S. 223 (2009), "a defendant presenting an
immunity defense on a Rule 12(b)(6) motion instead of a motion
for summary judgment must accept the more stringent standard
applicable to this procedural route," *McKenna v. Wright,* 386
F.3d 432, 436 (2d Cir. 2004). *See also Field Day, LLC v. Cnty.
of Suffolk*, 463 F.3d 167, 191-92 (2d Cir. 2006) (a defendant
asserting a qualified immunity defense on a motion to dismiss
"faces a formidable hurdle…and is usually not successful.").

As for the state law claims, "the substantive law of
Vermont governs the applicability of qualified immunity."
*Napolitano v. Flynn*, 949 F.2d 617, 621 (2d Cir. 1991). Under

Vermont law a public official is entitled to qualified immunity if they are "(1) acting during the course of their employment and acting, or reasonably believing they are acting, within the scope of their authority; (2) acting in good faith; and (3) performing discretionary, as opposed to ministerial acts." *Murray v. White*, 155 Vt. 621, 627, 587 A.2d 975, 978 (1991). Under Vermont law, once a defendant asserts the defense of qualified immunity, it is the plaintiff's burden to "rebut the qualified immunity defense 'by establishing that the official's allegedly wrongful conduct violated clearly established law.  We do not require that an official demonstrate that he did not violate clearly established federal rights; our precedent places that burden upon plaintiffs." *Sprague v. Nally*, 2005 VT 85, ¶ 4 n.3 (internal quotation marks and citation omitted).

   *1. Claims Against Raymond Allen*

   To the extent that Bellows is attempting to sue Raymond Allen in his individual capacity, the claims he advances appear to be claims brought under § 1983 because Bellows complains of a "policy, custom or practice of deliberate indifference to the Constitutional rights and safety of the public" as well as a failure to train in the prevention of violations of Constitutional rights and indifference to Constitutional violations.  ECF No. 7 at 9.  Yet the complaint's conclusory allegations fall far short of alleging the personal involvement

that would be necessary to bring a claim.  *See Farid v. Ellen*, 593 F.3d 233, 249 (2d Cir. 2010) ("It is well settled in this Circuit that personal involvement of defendants in alleged constitutional deprivations is a prerequisite to an award of damages under § 1983."); *Tangreti v. Bachmann*, 983 F.3d 609, 618 (2d Cir. 2020) (there is no special rule for supervisory liability; instead, "a plaintiff must plead and prove that each Government-official defendant, through the official's own individual actions, has violated the constitution.").  There are no allegations about Raymond Allen aside from his supervisory position and a conclusory allegation about how, in his supervisory capacity, he "had personal involvement with the lack of training of the deputy sheriffs and the continuation of the policy, custom, and practice of deliberate indifference to the Constitutional violations and negligence of the deputies."  ECF No. 7 at 8.  These conclusory allegations are not enough.  *See Amnesty Am. v. Town of W. Hartford*, 361 F.3d 113, 129 (2d Cir. 2004) (plaintiff must demonstrate both "that the officials' purported failure to train occurred under circumstances that could constitute deliberate indifference" and must "identify a specific deficiency in the city's training program and establish that the deficiency is closely related to the ultimate injury such that it actually caused the constitutional deprivation.").

Therefore, the claim against the Grand Isle Sheriff (Raymond Allen) in his individual capacity is dismissed.

2. *Search and Seizure (Brandon Allen, Blake Allen, Eric Pockette)*

Bellows alleges that Brandon Allen, Blake Allen, and Eric Pockette all violated the United States Constitution and Vermont State Constitution by holding him in an illegal seizure for an unreasonable length of detention. ECF No. 7 at 10, 15-16, 21. The complaint alleges that Brandon Allen and Blake Allen "seized and prolonged the detention of Plaintiff as described herein beyond a reasonable time for the purpose of the initial alleged traffic stop. (inspection sticker)." *Id.* at 10, 15-16. This has caused Bellows to suffer "flashbacks, depression, sleeplessness and other emotional and physical disturbances." *Id.* Bellows also argues that Pockette's "warrantless running of the serial number" of his gun "violated Plaintiff's Fourth Amendment right against illegal search and seizure." *Id.* at 21.

An ordinary traffic stop constitutes a "seizure" within the meaning of the Fourth Amendment and thus is "subject to the constitutional imperative that it not be 'unreasonable' under the circumstances." *Whren v. United States*, 517 U.S. 806, 810 (1996). The officer must have at least reasonable suspicion that the vehicle's occupants are engaged in unlawful conduct, *see United States v. Gomez*, 877 F.3d 76, 86 (2d Cir. 2017),

25

which requires "some minimal level of objective justification
for making the stop." *United States v. Sokolow*, 490 U.S. 1, 7
(1989) (internal quotation marks omitted).  This may include
traffic violations or vehicle registration violations.  *See,
e.g., United States v. Jenkins*, 452 F.3d 207, 212 (2d Cir. 2006)
(upholding constitutionality of traffic stop where vehicle
appeared to lack two license plates, in violation of New York
Vehicle and Traffic Law); *see also Gomez*, 877 F.3d at 86
(traffic stop is reasonable if the stopping officer has probable
cause or reasonable suspicion that the person stopped committed
a traffic violation); *see also United States v. Scopo*, 19 F.3d
777, 782 (2d Cir. 1994) (even a "minor" traffic violation meets
this standard); *Whren*, 517 U.S. at 810 ("As a general matter,
the decision to stop an automobile is reasonable where the
police have probable cause to believe that a traffic violation
has occurred.").

    Here, Bellows appears to allege in his complaint that the
initial traffic stop was caused by his inspection sticker.  ECF
No. 7 at 10, 15-16.  In Vermont, it is a traffic offense to
operate a vehicle without a valid inspection certification.  23
V.S.A. § 1222; *State v. Thompson*, 175 Vt. 470, 472, 816 A.2d
550, 553 (2002) (concluding, in case where officers observed
vehicles with missing equipment, that: "at the time of the
stops, there was a reasonable possibility that defendants were

26

committing a traffic offense – operating a vehicle without a
valid inspection certification.").  In his opposition to the
motion to dismiss, Bellows elaborates that he committed multiple
civil traffic violations when explaining that he committed no
crimes: "The Crime Committed – NONE ticket for expired
registration Warning for cracked windshield and expired
inspection sticker."  ECF No. 22 at 7.  The initial stop, then,
had an objective justification.[6]  "We have held repeatedly that a
traffic stop based on a reasonable suspicion of a traffic
violation comports with the Fourth Amendment."  *United States v.
Stewart*, 551 F.3d 187, 191 (2d Cir. 2009).

"Even if lawful at its inception, a traffic stop can
violate the Fourth Amendment if [it] unreasonably" extends the
detention beyond the time necessary to achieve the purposes of
the stop.  *United States v. Wallace*, 937 F.3d 130, 137-38 (2d
Cir. 2019) (internal quotation marks omitted); *see also
Rodriguez v. United States*, 575 U.S. 348, 350 (2015) ("[A]
police stop exceeding the time needed to handle the matter for
which the stop was made violates the Constitution's shield
against unreasonable seizures.").  While a prolonged stop
resulting from "investigative inquiries unrelated to the traffic

---

[6] Bellows may not be arguing otherwise.  He asserts claims for a
"prolonged" detention and is not explicitly complaining about
the initial stop.

violations" may run afoul of the Fourth Amendment, it is well-established that "beyond determining whether to issue a traffic ticket," an officer may make "'ordinary inquiries incident to [the traffic] stop.'" *Gomez*, 877 F.3d at 88-89. "Typically such inquiries involve checking the driver's license, determining whether there are outstanding warrants against the driver, and inspecting the automobile's registration and proof of insurance." *Rodriguez*, 575 U.S. at 355.

Here, Bellows does not give an estimate of time that the stop took, except to say that he was driving before the stop (at approximately 11:07 a.m.) and that a second officer (Brandon Allen) arrived on the scene at approximately 11:09 a.m. After Brandon Allen arrived on the scene, Blake Allen arrived on the scene, and Bellows alleges that the officers gave him conflicting instructions, belittled and yelled at him, asked for his license, and—at some point—Pockette ran his gun serial number.[7] Bellows specifically alleges that Brandon, Blake, and Pockette prolonged the traffic stop.

---

[7] The complaint does not provide much information about the frisk that led to the gun's discovery, beyond: "Plaintiff approached his vehicle as instructed and Defendant Eric Pockette reached under Plaintiff's coat and felt the holster of Plaintiff's lawfully owned handgun" and then "Defendant Eric Pockette proceeded to grab Plaintiff's right shoulder and press him against his vehicle. Defendant then placed Plaintiff's hands behind his back and took Plaintiff's handgun out of his possession and placed it on the roof of the vehicle." ECF No. 7 at 5.

Bellows does not state at what point the ticket was issued, though he does say that there was a ticket (ECF No. 22 at 7). Though the Court infers that the berating remarks made by the officers were done in rude tones and a derogatory manner, the majority of them—as quoted by Bellows in his allegations—are either instructions about how to behave during the stop (conflicting as they are), warnings about next time ("you are not to be trusted and you will be treated as such and just so you know, that the next time I stop you, you're going to have zero chances"), and a request for Bellows' license. Because the remarks relate to the traffic stop itself, and not to a different topic or a different investigation, it is difficult to say whether the stop—as pled in the Complaint—was "prolonged" by these berating remarks alone. *See United States v. Sharpe*, 470 U.S. 675, 687-88 (1985) (upholding twenty-minute detention following traffic stop where agent diligently pursued investigation with no unnecessary delay); *United States v. Foreste*, 780 F.3d 518, 526 (2d Cir. 2015) (upholding twenty-two minute traffic stop where officers had reasonable suspicion that car was stolen); *Wallace*, 937 F.3d at 141 (upholding nine-minute traffic stop where officers diligently pursued investigation to quickly confirm or dispel their suspicions).

However, construed liberally, Bellows' complaint may be alleging that the running of his gun's serial number prolonged the stop, in addition to his argument that this serial number search was an unconstitutional search and seizure. Defendants argue that running a serial number of a gun does not violate Bellows' constitutional rights, and cite to cases in which some circuits have stated that legally obtained serial numbers can be checked without a Fourth Amendment violation occurring. *See, e.g., United States v. Watts*, 7 F.3d 122, 127 (8th Cir. 1993), *cert denied*, 510 U.S. 1078 (1994); *United States v. Wallace*, 889 F.2d 580, 583 (5th Cir. 1989), *cert denied*, 497 U.S. 1006 (1990) (police having "legally come into possession of the gun . . . were entitled, if not expected, to note and record its serial number."). However, the Defendants state that the handgun "was visible to Pockette" at the time he removed it, although the Complaint does not state this—according to the Complaint, "Defendant Eric Pockette reached under Plaintiff's coat and felt the holster of Plaintiff's lawfully owned handgun." ECF No. 7 at 5. A plausible reading of the Complaint could be that the gun was *not* visible, and Pockette decided to frisk Bellows. Yet Defendants do not address what alleged facts about the circumstances of the stop—taken from the Complaint—could lead this Court to conclude that the search that led to the discovery of the gun was justified. *See, e.g., Arizona v. Johnson*, 555

U.S. 323, 326-27 (2009) (pat-down of a passenger during traffic stop justified if officer has reasonable basis to think person stopped is armed and dangerous).

The Court does not need to reach that question yet, however, because when drawing all inferences for the Plaintiff, he has plausibly alleged more: he is alleging that his stop was unreasonably prolonged so that the officers could give conflicting instructions, belittle him, and run the serial number of his gun.  Bellows also alleges that the stop was prolonged because Eric Pockette falsely stated that Bellows got out of his vehicle at a traffic stop and walked away while refusing to listen to Pockette.  Bellows has stated a plausible claim that the stop was unreasonably prolonged.

Defendants do not elaborate much upon their defense of qualified immunity and their argument that the rights at issue were not clearly established in this case.  *See* ECF No. 18 at 24 ("With regard to the seizure and force claims, even if Mr. Bellows had the right not to be seized or subjected to the de minimis physical contact he experienced during the stop, the Defendants would be entitled to qualified immunity because such right is not clearly established.").  Moreover, "advancing qualified immunity as grounds for a motion to dismiss is almost always a procedural mismatch."  *Chamberlain v. City of White Plains*, 960 F.3d 100, 111 (2d Cir. 2020).  The Second Circuit

31

has explained that an individual's Fourth Amendment right to be
free of an unreasonably prolonged stop was clearly established
"well before" June 2016.  *See McLeod v. Mickle*, 765 F. App'x
582, 585 n.2 (2d Cir. 2019) (because *Rodriguez v. United States*,
135 S. Ct. 1609 (2015) was decided in April 2015, the decision
"clearly establish[ed]" the Fourth Amendment right to be free of
an unreasonably prolonged stop before June 2016).  The alleged
violation took place in 2023.  The Court holds that, at this
early stage of the case, Bellows has plausibly alleged a claim
under a right that was clearly established, and therefore the
motion to dismiss his federal search and seizure claim is
denied.

The Court also denies the motion to dismiss Bellows' state
search and seizure counts.  First, defendants did not brief
anything additional beyond the arguments they made for the
federal analysis.  *See* ECF No. 18 at 20 ("It does not appear
that analysis under the Vermont Constitution Article 11 would
lead to a different result on any search and seizure issue, but
if the Court disagrees, it should decline to exercise
supplemental jurisdiction as noted above.").  Second, the search
and seizure protection of Article 11 of the Vermont Constitution
generally "import[s] the reasonableness criterion of the Fourth
Amendment," *State v. Medina*, 2014 VT 69, ¶ 13, 197 VT 63
(internal quotation marks and citations omitted), although

Article 11 may also offer protections *broader* than the Fourth
Amendment, *State v. Roberts*, 160 Vt. 385, 392 (1993).
Accordingly, the Court similarly will not dismiss the claims
under Article 11.

The Court thus **denies** the motion to dismiss the search and
seizure counts.

*3. Excessive Force (Brandon Allen and Eric Pockette)*

Bellows next argues that Brandon Allen and Eric Pockette
used excessive against him. ECF No. 7 at 10-11, 19-20.
The only force that Bellows describes in his complaint involves:
(1) Pockette grabbing Bellows' right shoulder and pressing him
against the car; and (2) Brandon Allen grabbing Bellows by both
shoulders of his coat and turning him around. Bellows does not
specifically list out any physical injuries, such as bruising:
instead, as he clarifies in his opposition, he experienced
physical disturbances such as loss of appetite, weight, and
depression. *See* ECF No. 22 at 11 ("The Plaintiff heroin [sic]
alleges in his complaint flashbacks, depression, sleeplessness
and other emotion and physical disturbances. As it is not
required by F.R.C.P. 8(a), Plaintiff did not list every physical
component, yet Plaintiff did suffer a nervous stomach, loss of
appetite and loss of weight as a result of the actions of the
Defendants."). Bellows does not say that any of the actions
were done violently, or in a way that would tend to lead to

33

injuries.  Bellows instead argues that no force should have been
used against him at all.

The Fourth Amendment prohibits the use of excessive force
in making an arrest, and whether the force used is excessive is
to be analyzed under that Amendment's "'reasonableness'
standard."  *Graham v. Connor*, 490 U.S. 386, 395 (1989).  The
reasonableness of "a particular use of force must be judged from
the perspective of a reasonable officer on the scene, rather
than with the 20/20 vision of hindsight."  *Id.* at 396.

Defendants argue that Bellows fails to state a claim for
excessive force under the Fourth Amendment because he suffered
no physical injury.  ECF No. 18 at 10-13.  According to
defendants, because Bellows was confused by the instructions
given to him, the *de minimis* force used by the officers was
objectively reasonable.  In their brief, defendants argue that
in order "to succeed on a claim for excessive force, a plaintiff
must present sufficient evidence to establish that the alleged
use of force is objectively sufficiently serious or harmful
enough to be actionable" and they cite cases in which Second
Circuit courts have recognized "the concept of de minimis
injury," including injuries involving "short-term pain, swelling
and bruising, brief numbness from tight handcuffing, claims of
minor discomfort from tight handcuffing, and two superficial
scratches from a cut inside the mouth."  ECF No. 18 at 11,

34

citing *Jackson v. City of New York*, 939 F. Supp. 2d 219, 231
(E.D.N.Y. 2013).

In *Figueroa v. Mazza*, 825 F.3d 89, 105-06 (2d Cir. 2016),
the Second Circuit explained that whether the force used to
effect an arrest is reasonable or excessive turns on a "careful
balancing of the nature and quality of the intrusion on the
individual's Fourth Amendment interests against the
countervailing government interests at stake," and thus a number
of factors are relevant, including "the need for the application
of force, the relationship between the need and the amount of
force that was used, the extent of injury inflicted, and whether
force was applied in a good faith effort to maintain or restore
discipline or maliciously and sadistically for the very purpose
of causing harm." *Id.* (internal quotation marks and citations
omitted). In that case, the Second Circuit found that the
district court did not err in overriding the jury's verdict in
favor of defendants, where the officers needed to grip the
plaintiff's shoulders and push him along "because he lightly
resisted by stiffening his legs" and where there was "no
suggestion in the record that this application of light force
was actuated by malice or a desire to cause harm." *Id.*
Similarly, in *Preterotti v. Lora*, No. 1:16-cv-91-JGM-JMC, 2016
WL 6810883 (D. Vt. Oct. 6, 2016), *report and recommendation
adopted*, No. 1:16-cv-00091-JGM, 2016 WL 6810770 (D. Vt. Nov. 17,

2016), the court dismissed Preterotti's Fourth Amendment claim for excessive use of force where there were no allegations of even *de minimis* injury and Preterotti's "noncompliance justified some use of force… in attempting to execute the warrant." *Id.* at *7. In *Jackson v. City of New York*, 939 F. Supp. 2d 219 (E.D.N.Y. 2013), the court granted summary judgment on the excessive force claims to the defendants, where "it is undisputed that Defendants did not make any physical contact with Plaintiff and Plaintiff did not sustain any, even *de minimis*, injuries." *Id.* at 231. In *Arnold v. Westchester County*, 2012 WL 336129 (S.D.N.Y. Feb. 3, 2012), another case decided at summary judgment, the court carefully analyzed each use of force under the Eighth Amendment's excessive force standards. *Id.* at *4–*10.

The Court is mindful that "[n]ot every push or shove, even if it may later seem unnecessary in the peace of a judge's chambers," violates the Fourth Amendment. *Johnson v. Glick*, 481 F.2d 1028, 1033 (2d Cir. 1973). Here, there was not even an allegation of a push or a shove: again, Plaintiff only alleges that he was grabbed and pressed against his car. He does not say that the action was done violently. He does not say that he experienced bruising. The Court finds that the force used was *de minimis* such that the claim can be dismissed. This case is distinguishable from other cases in which the Plaintiffs did

36

experience some injuries or were forcefully handled in a way that would tend to give them injuries. *See Robison v. Via*, 821 F.2d 913, 924-25 (2d Cir. 1987) (plaintiff's claim survived summary judgment where she said that, during the course of an arrest, a police officer twisted her arm, "yanked" her, and threw her up against a car, causing bruising); *Maxwell v. City of New York*, 380 F.3d 106, 109-10 (2d Cir. 2004) (reversing grant of summary judgment in officer's favor where plaintiff alleged officer's use of force "was sufficient to send pains into her arm and lower back and leave her with post-concussive syndrome."). Here, there was no constitutional violation of excessive force.

Bellows also advances state law claims (assault and battery) based upon his allegations that the officers grabbed him. Under Vermont law, battery "is an intentional act that results in harmful contact with another." *Christman v. Davis*, 2005 VT 119, ¶ 6, 179 Vt. 99, 889 A.2d 746 (citing Restatement (Second) of Torts § 13 (1965)). "[A]ssault is defined as 'any gesture or threat of violence exhibiting an 'intention' to assault, with the means of carrying that threat into effect . . . unless immediate contact is impossible." *Billado v. Parry*, 937 F. Supp. 337, 343 (D. Vt. 1996) (alternation in original) (quoting *Bishop v. Ranney*, 59 Vt. 316, 318, 7 A. 820, 820-21 (1887)). "When assault and battery is alleged against police

officers, the inquiry is whether the officer's conduct was reasonably necessary and thereby privileged." *Crowell v. Kirkpatrick*, 667 F. Supp. 2d 391, 417 (D. Vt. 2009). Moreover, under state law qualified immunity, "[g]ood faith exists where an official's acts did not violate clearly established rights of which the official should have known." *Murray*, 155 Vt. at 627. Bellows alleges that his shoulders were grabbed twice during the traffic stop. This alleged force is reasonable and does not violate clearly established rights. The state law claims of assault and battery, based upon the use of excessive force, are therefore also dismissed.

*4. Free Speech (Brandon Allen and Eric Pockette)*

Bellows claims that Brandon Allen and Eric Pockette violated his First Amendment right to free speech and Article 13 of the Vermont Constitution. ECF No. 7 at 13-14, 23. Bellows argues that all of the events that transpired on November 11, 2023, happened as a retaliation because he refused to answer questions at the traffic stop on September 26, 2023. He argues that his expression was "chilled and deterred" because Brandon Allen told him: "We don't have to listen to you"; "stop interrupting me and shut your mouth"; "listen buddy, what part of fucking listen do you not understand?"; and "listen and keep your ass on the bumper." ECF No. 7 at 13. In addition, Pockette "chilled and deterred such expression by yelling and

38

screaming at Plaintiff." *Id.* at 23. Although he does not expressly make this allegation, Bellows may be arguing that the traffic ticket was issued to him in retaliation.

To state a plausible claim of a violation of the right to free speech, a plaintiff must allege "that official conduct actually deprived them of that right." *Williams v. Town of Greenburgh*, 535 F.3d 71, 78 (2d Cir. 2008). To prove this deprivation, a plaintiff must allege facts "showing either that (1) defendants silenced him or (2) defendants' actions had some actual, non-speculative chilling effect on his speech." *Id.* (cleaned up). "[T]o establish a First Amendment retaliation by a government actor, the plaintiff must demonstrate that '(1) his or her speech or conduct was protected by the First Amendment; (2) the defendant took an adverse action against him or her; and (3) there was a causal connection between this adverse action and the protected speech.'" *Agosto v. New York City Dep't of Educ.*, 982 F.3d 86, 94 (2d Cir. 2020) (quoting *Montero v. City of Yonkers*, 890 F.3d 386, 394 (2d Cir. 2018)). The existence of probable cause will defeat a First Amendment claim that is premised on the allegation that defendants prosecuted a plaintiff out of a retaliatory motive, in an attempt to silence the plaintiff; an individual "does not have a right under the First Amendment to be free from a criminal prosecution supported by probable cause, even if that prosecution is in reality an

unsuccessful attempt to deter or silence criticism of the government." *Higginbotham v. Sylvester*, 741 F. App'x 28, 31 (2d Cir. 2018) (summary order); *see also Mangino v. Inc. Vill. of Patchogue*, 808 F.3d 951, 956 (2d Cir. 2015) (explaining that the existence of probable cause effectively negates "retaliatory motive" in a First Amendment retaliatory prosecution claim.).

Here, Bellows argues that he was pulled over, yelled and screamed at, and issued traffic tickets as retaliation for a previous traffic stop in which he engaged in protected speech. However, he does not allege that he had not committed the violations for which the traffic tickets were issued. *See, e.g., Lilly v. Hall*, No. 23-7567, 2025 U.S. App. LEXIS 29592 (2d Cir. Nov. 12, 2025) (dismissing appeal where factual questions that were crucial to the disposition of the defendant's qualified immunity defense remain: "namely, whether the relevant ticket was issued in the absence of probable cause.") (summary order); *Richards v. City of New York*, No. 20-CV-3348 (RA)(KNF), 2021 U.S. Dist. LEXIS 155979, *8-9 (S.D.N.Y. Aug. 18, 2021) ("The Court finds that Plaintiff has failed to plausibly allege any connection between his complaints to police officials and the subsequent traffic tickets and stops.  Indeed, Plaintiff provides a lawful explanation for each of his police encounters."); *Bar-Levy v. Mitchell*, No. 22-CV-3408 (CS), 2022 U.S. Dist. LEXIS 194320, at *13 (S.D.N.Y. Oct. 25, 2022)

("Plaintiff provides no facts to support these allegations or render them plausible. To the contrary, he undermines them by conceding that he had been parked on the sidewalk—behavior that gave Defendant probable cause to stop and issue Plaintiff a ticket."). Indeed, Bellows only provides conclusory allegations as to the nature of the retaliation. This claim, therefore, must be dismissed.

The Court also dismisses the claim under Chapter I, Article 13 of the Vermont Constitution. *See State v. Masic*, 2021 VT 56, ¶ 7, 261 A.3d 646, 651 ("We have so far declined to extend greater free-speech protection under Article 13 than under the First Amendment and thus engage in a First Amendment analysis, construing Article 13 as coextensive with its federal analogue.").

*5. Failure to Intervene*

Plaintiff argues that defendants Blake Allen and Eric Pockette were liable for failing to intervene when defendant Brandon Allen used excessive force against him, ECF 7 at 16-17, 25-26. The Second Circuit has explained that an officer who "fails to intercede is liable for the preventable harm caused by the actions of the other officers where that officer observes or has reason to know: (1) that excessive force is being used… (2) that a citizen has been unjustifiably arrested…or (3) that any constitutional violation has been committed by a law enforcement

41

official." *Anderson v. Branen*, 17 F.3d 552, 557 (2d Cir. 1994)
(cleaned up). Here, as set forth above, the plaintiff did not
sufficiently allege a constitutional violation of excessive
force. Accordingly, the claims for failure to intervene with
regard to the excessive force violation are also dismissed.

    *6. False Information to Law Enforcement*

On page 24 of his complaint, Bellows argues that defendant
Pockette knowingly "fabricated materially false statements and
repeatedly communicated knowingly, willfully and with
malice…that Plaintiff got out of his vehicle at a traffic stop,
walked away from Defendant Eric Pockette and did not listen to
Defendant Eric Pockette." ECF No. 7 at 24. Plaintiff says that
these statements violated the Due Process clause because they
took away his liberty; however, there is no evidence that
Plaintiff was detained on the basis of these statements (he was
not arrested or put in jail) outside of Plaintiff's seizure
claims, on which this Court has denied the motion to dismiss.
Plaintiff may explore whether statements made by Pockette
unreasonably prolonged his detention, but outside of the illegal
seizure claim it is not clear what claim Plaintiff is attempting
to bring.

It is possible that Bellows is trying to charge defendant
Pockette under 13 V.S.A. § 1754, a Vermont criminal statute that
provides that "a person who knowingly gives false information to

any law enforcement officer with purpose to implicate another or to deflect an investigation from the person or another person shall be imprisoned for not more than one year or fined not more than $1,000.00, or both." This statute provides no private right of action, and the Court declines to imply such a right where the Vermont Supreme Court has not already done so. *See Watson v. City of New York*, 92 F.3d 31, 36 (2d Cir. 1996) ("[I]n the absence of any guidance from state courts, federal courts are hesitant to imply private rights of action from state criminal statutes."); *see also Segar v. Barnett*, No. 2:20-cv-126, 2020 U.S. Dist. LEXIS 209186, at *7 (D. Vt. Nov. 9, 2020) (declining to imply a private right of action under 13 V.S.A. § 1754).

Accordingly, the Court dismisses Bellows' claims for "misrepresentation, fabrication and false information to law enforcement."

*7. Negligence and Negligent Infliction of Emotional Distress*

Bellows several claims related to negligence. First, Bellows brings a "state claim of negligence" against the Grand Isle, Vermont Sheriff's Department and Raymond Allen, the Grand Isle Sheriff. Because of the nature of the allegations themselves, however, the Court interpreted these claims as brought under § 1983 and addressed them, and dismissed them, above.

43

Next, Bellows brings claims of "negligence" and "intentional/negligent infliction of emotional distress" against Brandon Allen (ECF No. 7 at 14-15), Blake Allen (*id.* at 17-18), and Eric Pockette (*id.* at 26-27). However, in his response to the motion to dismiss, Plaintiff states that he voluntarily withdraws his claim for intentional infliction of emotional distress. ECF No. 22 at 10. The Court dismisses these voluntarily withdrawn claims of intentional infliction of emotional distress.

As for the negligence and negligent infliction of emotional distress, Bellows does not describe in detail the specific conduct that he is basing his claims upon.[8] In his opposition to the motion to dismiss, however, Bellows clarifies that "Defendants were negligent and breached that duty to Plaintiff by using excessive force, assault and battery upon Plaintiff." ECF No. 22 at 10.

---

[8] For example, Bellows brings his negligent infliction of emotional distress claim against Brandon Allen because, in part, "[t]he emotional and physical injuries and ramifications sustained by the Plaintiff are the direct and proximate cause of the intentional, malicious, reckless and/or negligent acts of the Defendant, Brandon Allen, as described herein" and his negligence claim against Brandon Allen because "Defendant Brandon Allen had a duty to act responsibly and he breached his duty of care, exercised excessive force, failed to intervene and other omissions of care as noted within this Complaint." ECF No. 7 at 14-15.

Under Vermont law, "[c]ommon law negligence has four elements: a legal duty owed by defendant to plaintiff, a breach of that duty, actual injury to the plaintiff, and a causal link between the breach and the injury." *Demag v. Better Power Equip., Inc.*, 2014 VT 78, ¶ 6, 197 Vt. 176, 179, 102 A.3d 1101, 1105 (citation and internal quotation marks omitted). "To establish a claim for negligent infliction of emotional distress, a plaintiff must make a threshold showing that he or someone close to him faced physical peril." *Brueckner v. Norwich Univ.*, 169 Vt. 118, 125, 730 A.2d 1086, 1092 (1999). If there was a physical impact from an external force, then the plaintiff may recover for emotional distress; if plaintiff has not suffered an impact, plaintiff must show additional elements. *Id.*

Bellows may not base a claim for negligence or negligent infliction of emotional distress upon an officers' intentional use of force: "the concept of negligence cannot apply to such intentional conduct." *Galipeau v. Stemp*, No. 14-cv-55, 2016 U.S. Dist. LEXIS 74952, 2016 WL 3190659, at *17 (D. Vt. June 6, 2016); see also *Burwell v. Peyton*, 131 F. Supp. 3d 268, 300 (D. Vt. 2015) (claims alleging intentional acts do not give rise to claims sounding in negligence).

IV.  **Conclusion**

For the reasons set forth above, the Court **dismisses** the
following claims: all claims brought against the defendants in
their official capacities; all claims against the Grand Isle
Sheriff's Department and the Grand Isle Sheriff (Raymond Allen);
the claims based upon the excessive use of force (including the
state claims for assault and battery); the failure to intervene
claims; all claims based upon a "violation of 1st Amendment and
Article 13 (Free Speech)"; the claim titled "misrepresentation,
fabrication and false information to law enforcement;" the
voluntarily-dismissed intentional infliction of emotional
distress claims; and the negligence and negligent infliction of
emotional distress claims.  The Court **denies** the motion to
dismiss on the search and seizure claims brought against the
defendants in their individual capacities.

Plaintiff has requested leave to amend his complaint (ECF
No. 22 at 17).  The Court grants leave to amend.  Plaintiff may,
but is not required to, amend his complaint.  The Court is aware
that the parties recently agreed to a Stipulated Discovery
Schedule/Order, that this Court entered.  ECF No. 28.  The
parties agreed that "[m]otions for joinder of parties and
amendments to the pleadings shall be filed on or before
03/19/2026."  ECF No. 28 at 2-3.  Plaintiff shall therefore file
any amended complaint on or before March 19, 2026.

DATED at Burlington, in the District of Vermont, this 10th day of February 2026.

/s/ William K. Sessions III
Hon. William K. Sessions III
U.S. District Court Judge